UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
BRIDGETT TUCKER                     )
                                    )
    and                             )
                                    )
ELIZABETH ONYILOFOR,                )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )   Civil Action No. 10-756 (RBW)
                                    )
HOWARD UNIVERSITY HOSPITAL,         )
                                    )
        Defendant.                  )
_____ )

## MEMORANDUM OPINION

The plaintiffs, Bridgett Tucker ("Tucker") and Elizabeth Onyilofor ("Onyilofor"), bring this action against the defendant, Howard University Hospital ("Howard"), alleging that they were sexually harassed in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 (2006), and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 (2007). The plaintiffs also bring a breach of contract claim against the defendant alleging violations of their employment contracts. Compl. ¶¶ 25, 26.[1] The plaintiffs filed this action in the Superior Court of the District of Columbia ("Superior Court"), and the defendant removed the case to this Court. See Notice of Removal.[2] This matter is currently before the Court on Howard's Rule 12(b)(6) motion to dismiss for failure to state a claim upon

---

[1] The plaintiffs requested, and were granted, leave to amend their first complaint to correct minor typographical errors. See Dkt. No. 7. The amended complaint will be referred to here simply as "Complaint" or "Compl."

[2] This Court has subject matter jurisdiction over the federal Title VII claims pursuant to 28 U.S.C. § 1441(b) (2002) and 42 U.S.C. § 2000e-5(f)(3) (2010), and supplemental jurisdiction over the related DCHRA and breach of contract claims pursuant to 28 U.S.C. § 1367(a) (1990).

1

which relief can be granted. See generally Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and Pursuant to 28 U.S.C. Section 1367(C)(3) ("Def.'s Mot.").[3] For the following reasons the defendant's motion is denied.

## I. FACTUAL BACKGROUND

The plaintiffs were both employed as registered nurses in the emergency room at Howard from February 2004 until April 27, 2007. Compl. ¶¶ 8, 9, 14. Each plaintiff "executed an employment contract" with Howard, which provided, in pertinent part, that "[t]his agreement may be terminated by either party upon giving sixty (60) days written notice of the other." Id. ¶ 15. "At all operative times" during their employment at Howard, Dr. Geoffrey Mountvarner ("Mountvarner") was "in charge of the Emergency Room at [Howard] . . . ." Id. ¶ 11. The plaintiffs allege that,

> [d]uring their employment at [Howard], Dr. Mountvarner harassed the Plaintiffs by frequent comments for sexual favors, improper touching, and inappropriate sexual comments in the workplace such as 'just give me a chance,' and this harassment continued virtually every day throughout the entire time [the] Plaintiffs were employed at [Howard].

Id. ¶ 12. The plaintiffs "complained to [their] superiors at [Howard], including complaining to their immediate supervisor, Ms. Evelyn White . . ., but nothing was done to address the [p]laintiffs' complaints." Id. ¶ 13. According to the Complaint, "on or about April 27, 2007, each of the Plaintiffs was terminated without cause, without prior notice, and without being provided a reason for the termination." Id. ¶ 16.

Plaintiffs Tucker and Onyilofor each completed an "EEOC Intake Questionnaire" on

---

[3] The Court also considered the following documents in resolving this motion: the Defendant's Memorandum in Support of its Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and Pursuant to 28 U.S.C. Section 1367(C)(3) ("Def.'s Mem."); the Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Pls.' Opp'n"); and the Defendant's Reply Memorandum in Further Support of its Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and Pursuant to 28 U.S.C. Section 1367(C)(3) ("Def.'s Reply Mem.").

2

February 4, 2008.  Def.'s Mot. Exhibits ("Ex." or "Exs.") C, D.  In addition to their "Intake Questionnaires," the plaintiffs' February 4, 2008 Equal Employment Opportunity Commission ("EEOC") filing included a letter from their attorney.  Pls.' Opp'n, Ex. 1 (Carpenter Letter).[4]  The letter indicated: "[e]nclosed please find intake questionnaires that have been completed and signed by both clients detailing the discrimination they suffered while employed at Howard. . . . Kindly file same with your office and initiate an investigation of the charges made as required by law."  Id.

Plaintiff Tucker filed a "Charge of Discrimination" form with the EEOC Office of Human Rights, on March 10, 2008.  Def.'s Mot., Ex. A.  Plaintiff Onyilofor filed the same document with that office on March 14, 2008.[5]  Def.'s Mot., Ex. B.  Each plaintiff's "Charge of Discrimination" forms contain identical allegations:

> While employed at the [Howard] Emergency Room, I was habitually sexually harassed by Dr. Geoffrey [Mountvarner],[6] the physician in charge of the Emergency Room.  The harassment included frequent requests for sexual favors, improper touching and inappropriate sexual comments in the workplace.  The harassment continued until I was discharged on 4/27/07.

Def.'s Mot., Exs. A, B.

Receiving no response from the EEOC regarding their allegations, the plaintiffs commenced this action in the Superior Court on April 22, 2010, well over 180 days from their last contact with EEOC.  See generally Compl. The defendant filed a Notice of Removal with this Court on May 11, 2010.  Notice of Removal, Ex. C.

---

[4] The defendant's initial Memorandum in Support of its Motion to Dismiss does not refer to the letter from the plaintiffs' counsel.  Apparently, the letter was not provided to the defendant upon the defendant's initial document request, see Def.'s Reply Mem. at 3, 14-15, and the defendant only became aware of the letter when the plaintiffs included it with their opposition to the defendant's motion to dismiss, see Pls.' Opp'n, Ex. 1.

[5] Ms. Onyilofor's "Charge of Discrimination" was stamped as received by the EEOC's Washington Field Office on March 21, 2008, but was signed by Ms. Onyilofor and dated March 14, 2008.  See Def.'s Mot. Ex. B.

[6] Both documents refer to Dr. Mountvarner as "Mt. Varner."  The Court will instead refer to him as "Mountvarner."  See Compl. ¶ 11.

3

## II. LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the plaintiff has properly stated a claim upon which relief may be granted. Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000). For a complaint to survive a Rule 12(b)(6) motion, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the claim is and the grounds on which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). "Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, a plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." Hinson ex rel. N.H. v. Merritt Educ. Ctr., 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted). Or, as the Supreme Court more recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). A complaint alleging facts which are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557) (brackets omitted). Finally, in evaluating a Rule 12(b)(6) motion, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)

(internal quotation marks and citations omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted).

### III. LEGAL ANALYSIS

**A. Counts I and II (The Title VII and District of Columbia Human Rights Act Claims)**

**1. The Defendant's Timeliness Challenge**

The defendant alleges that the plaintiffs did not file a charge with the EEOC within the 300-day limitations period. Def.'s Mot. at 1.[7] The plaintiffs did not file independent charges with the District of Columbia Office of Human Rights ("DCOHR"), but a timely filed EEOC charge is cross-filed with the DCOHR, which tolls the DCHRA's statute of limitations. Ibrahim v. Unisys Corp., 582 F. Supp. 2d 41, 45 (D.D.C. 2008); see Lee v. District of Columbia, Civ. No. 09-1832 (RMU), 2010 WL 3338542, at *3 (D.D.C. 2010) (citing Schuler v. PricewaterhouseCoopers, LLP, 514 F.3d 1365, 1372-73 (D.C. Cir. 2008); Fowler v. District of Columbia, 122 F. Supp. 2d 37, 41-42 (D.D.C. 2000)) (finding that "charges filed with the EEOC are deemed simultaneously filed with the DCOHR"). In the District of Columbia, an EEOC charge must be filed within 300 days of the date of the alleged discrimination. See Griffin v. Acacia Life Ins. Co., 925 A.2d 564, 568-69, n.13 (D.C. 2007) (explaining that, due to the

---

[7] The defendant also contends that the plaintiffs have failed to exhaust administrative remedies because "the Complaint does not allege that the EEOC has issued a right-to-sue letter, as required under 42 U.S.C. § 2000e-5(f)(1)." Def.'s Mem. at 5 n.3. 42 U.S.C. § 2000e-5(f)(1) provides that if the EEOC has not acted upon a "charge" within 180 days of its filing, it "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . ." However, "Title VII's exhaustion requirement does not constitute a jurisdictional barrier to filing a lawsuit," Holmes v. PHI Serv. Co., 437 F. Supp. 2d 110, 121 (D.D.C. 2006), and "[u]nlike jurisdictional exhaustion requirements, which the Court may not excuse, . . . a plaintiff's failure to fulfill a non-jurisdictional exhaustion requirement need not be fatal to her claim." Id. at 123.

5

"worksharing" arrangement between the EEOC and the DCHRA, the deadline to file an EEOC charge in the District of Columbia is 300 days from the date of the alleged discrimination). Moreover, "[a] charge alleging a hostile work environment claim . . . will not be time[-]barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." AMTRAK v. Morgan, 536 U.S. 101, 122 (2002). Thus, in cases, such as this one, where a plaintiff contends that she was subjected to a hostile work environment throughout her employment and she is no longer employed by the defendant, the statute of limitations for a timely EEOC filing of such a claim is measured from the last date of employment. Ibrahim, 582 F. Supp. 2d at 47. As the plaintiffs did not file independent charges with the DCHRA, and therefore only timely EEOC charges could toll the one-year DCHRA statute of limitations under D.C. law, Estenos v. PAHO/WHO Federal Credit Union, 952 A.2d 878, 882 (D.C. 2008), the sustainability of the plaintiffs' DCHRA claims depends on whether they filed timely Title VII charges.

Both plaintiffs' employment at Howard was terminated on April 27, 2007. Compl. ¶ 14. The question for the Court to answer is whether they filed a "charge" with the EEOC within 300 days of the termination of their employment by Howard. Tucker and Onyilofor, having filed their "EEOC Charge[s] of Discrimination" on March 10 and March 14, 2008, respectively, Def.'s Mot., Exs. A, B, failed to submit these documents within the 300 day limitations period. The plaintiffs, however, contend that their EEOC "Intake Quesitonnaire[s]," along with the accompanying letter from their attorney, which were filed on February 4, 2008, constitute "charges" for statute of limitations purposes. Pls.' Opp'n. at 2-7. The defendant disagrees. Def.'s Reply Mem. at 13-16.

The defendant argues that the plaintiffs' EEOC Intake Questionnaires do not qualify as

6

"charges" for statute of limitations purposes. Id. To qualify as a "charge," the EEOC Intake Questionnaire must contain "an allegation and the name of the charged party, . . . [and] it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008). "The filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial process . . . ." Id. In other words, "a filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf." Id. at 404.

Here, the plaintiffs' Intake Questionnaires were accompanied by a letter from their attorney, requesting that the EEOC "initiate an investigation of the charges made as required by law." Pls.' Opp'n, Ex. 1 (Carpenter Letter). While this request did not specify the relief the plaintiffs were seeking, as did the affidavit filed by the plaintiff in Holowecki, see 552 U.S. at 405 (noting that the plaintiff "asked the agency to '[p]lease force Federal Express to end their age discrimination plan' . . ."), it did "request agency action" and was therefore asking that the EEOC "activate its machinery and remedial process." Id. at 402, 404. And although the plaintiff's EEOC Intake Questionnaire in Holowecki included a "detailed six-page affidavit," the Supreme Court's determination that a charge had been filed did not hinge upon the level of detail provided in the filing, but whether the language "please force Federal Express to end their age discrimination plan . . ." included in the affidavit was "properly construed as a request for the agency to act." Id. at 405. Accordingly, the import of Holowecki is not that a detailed description of the facts underlying a charge must be included in a filing, but rather, that a filing constitutes a charge if it can reasonably be construed as a request for agency action.

Here, the plaintiffs' EEOC Intake Questionnaires and the attached letter from their attorney satisfy this requirement. The Intake Questionnaire form itself provides that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination under the relevant statute(s)." See Def.'s Mot., Exs. C, D at 4.  The Intake Questionnaire form also states that its purpose "is to solicit information in an acceptable form consistent with statutory requirements to enable the Commission to act on matters within its jurisdiction." Id.  This language leads to the reasonable conclusion that completing the Intake Questionnaire alone can amount to a request for agency action, and therefore a "charge" under Holowecki.  See Hodge v. United Airlines, 666 F. Supp. 2d 14, 16-17, 18 (D.D.C. 2009) (holding that the language included in the Questionnaire, even without a request for specific relief, rendered the completed form a request for agency action); Beckham v. AMTRAK, 590 F. Supp. 2d 82, 87 (D.D.C. 2008) (holding that the language on the questionnaire form, identical to that in this case, "is intended to enable the agency 'to act' without more.").  Therefore, even without the accompanying letter from counsel, the Intake Questionnaires can reasonably be construed as requests for agency action.  However, even if this finding could not be made solely based on the Intake Questionnaires, the letter from counsel requested that the EEOC "initiate an investigation of the charges made as required by law."  Pls.' Opp'n, Ex. 1 (Carpenter Letter).  When considered collectively, there can be no doubt that the Intake Questionnaires and counsel's letter were requests for agency action under Holowecki.

Moreover, under EEOC regulations, "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. §

1601.12(b). All that is required is that "[a] charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s)." 29 C.F.R. § 1626.6. Here, the plaintiffs' Intake Questionnaires name the defendant, allege that they were discriminated against based on their sex, and generally describe the discriminatory acts, including that they were "habitually sexually harassed," by Dr. Mountvarner, and that "[t]he harassment included frequent requests for sexual favors, improper touching and inappropriate sexual comments in the workplace." Def.'s Mot. Exs. C, D. Unlike in <u>Marshall v. Honeywell Tech. Solutions, Inc.</u>, 598 F. Supp. 2d 57, 61-62 (D.D.C. 2009), where the plaintiff's Intake Form simply checked boxes representing categories of discrimination and was utterly devoid of any factual explanation of the alleged discriminatory conduct, <u>id.</u>, the plaintiffs' Intake Questionnaires in this case generally describe the actions and practices complained of with sufficient detail to satisfy the EEOC's minimal threshold. <u>See</u> <u>Holowecki</u>, 552 U.S. at 402-03 ("It is true that under this permissive standard a wide range of documents might be classified as charges. But this result is consistent with the design and purpose of the ADEA. . . . [which], like Title VII, sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.") (internal citations and quotations omitted). These allegations, combined with the plaintiffs' letter from counsel requesting initiation of an EEOC investigation into the allegations, are reasonably interpreted as requests for the EEOC to "activate its machinery and remedial processes," and are therefore "charges." <u>Id.</u> at 402.

The plaintiffs' Intake Questionnaires also contain all the legally required elements of a charge: they named the employer (Howard) and their direct supervisor, listed the approximate number of employees for Howard, and provided a concise statement of the facts, including dates, of the alleged discriminatory practices. <u>See</u> 29 C.F.R. § 1601.12(a) (describing the required

contents of a charge). Because they were filed on February 4, 2008, within the 300-day filing deadline, Howard's motion to dismiss the plaintiffs' Title VII claims as untimely is denied. Additionally, because a timely EEOC charge is considered to have been cross-filed with the DCHRA, tolling the statute of limitations for the plaintiffs' DCHRA claims, the defendant's motion to dismiss the DCHRA claims as untimely is also denied.

### 2. The Defendant's 12(b)(6) Challenge

As noted above, in order to defeat a defendant's motion to dismiss under Rule 12(b)(6), the plaintiffs' complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, ___ U.S. at ___, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). The plaintiffs' complaint must therefore allege facts that make it plausible that they were subjected to a hostile work environment resulting from sexual harassment. Because it is well-established that DCHRA and Title VII discrimination claims are analyzed under the same legal standard, see, e.g., Elhusseini v. Compass Group USA, Inc., 578 F. Supp. 2d 6, 10 n.4 (D.D.C. 2008) (collecting cases), the following applies to both Counts I and II of the plaintiffs' Complaint.

While the plaintiffs are correct that they are "not required to plead in [their] complaint all elements of a prima facie case, or 'plead law or match facts to every element of a legal theory,'" Miller v. Insulations Contractors, Inc., 608 F. Supp. 2d 97, 106 (D.D.C. 2009) (quoting Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000)), "the alleged facts must be able to support such a claim." Smith v. Jackson, 539 F. Supp. 2d 116, 137 (D.D.C 2008) (citing Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000)). "To establish a prima facie case of the existence of a hostile work environment based on sexual harassment, the plaintiff must state facts sufficient to prove each of the following elements: (1) she was subjected to harassment because

of her sex; (2) she found the harassment subjectively unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive, hostile working environment; and (4) she has some basis for imputing liability for the harassment to the employer." Cromer-Kendal v. District of Columbia, 326 F. Supp. 2d 50, 57-58 (D.D.C. 2004). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). "[I]n order to be actionable under [Title VII], a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). "Whether an environment meets this standard depends on 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id.

In their Complaint, the plaintiffs allege that

> [d]uring their employment at [Howard], Dr. Mountvarner harassed the Plaintiffs by frequent comments for sexual favors, improper touching, and inappropriate sexual comments in the workplace such as 'just give me a chance,' and this harassment continued virtually every day throughout the entire time Plaintiffs were employed at HUH.

Compl. ¶ 12. The defendant argues that this paragraph of the Complaint fails to allege the elements required for a hostile work environment sexual harassment claim. Def.'s Mem. at 10-11. However, the plaintiffs are not required to allege each element of their claim in their Complaint in order to defeat a Rule 12(b)(6) motion to dismiss. Rather, the plaintiffs are required to "plead factual content" that would allow the Court "to draw the reasonable inference

11

that the defendant is liable for the misconduct alleged." Iqbal ___ U.S. at ___, 129 S. Ct. at 1949. Viewed from this perspective, the plaintiffs have met this burden.

The plaintiffs allege that Dr. Mountvarner made "frequent requests for sexual favors," that he improperly touched them, and that he made "inappropriate sexual comments in the workplace." Compl. ¶ 12. While these allegations are concededly non-specific, they are facts that, taken in the light most favorable to the plaintiffs, make it plausible that the plaintiffs were subjected to this conduct because of their sex, and that they found the conduct subjectively offensive. Cromer-Kendal, 326 F. Supp. 2d at 57-58. The plaintiffs also allege in their Complaint that the requests for sexual favors, improper touching, and inappropriate sexual comments "continued virtually every day throughout the entire time [they] were employed at [Howard]." Compl. ¶ 12. Whether a hostile work environment is created "depends on 'all the circumstances,' including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher, 524 U.S. at 787. Thus, although the plaintiffs' factual allegations do not support the contention that Dr. Mountvarner's actions were physically threatening, or that they were extreme, the plaintiffs do allege that the discriminatory conduct occurred nearly every day for over four years. Compl. ¶ 12. The Court finds, accepting the allegations in the Complaint as true, that a reasonable person could plausibly find that conduct of that nature committed with the frequency and duration alleged by the plaintiffs was sufficiently pervasive to "produce a constructive alteration in the terms or conditions of [their] employment," Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752 (1998), and that it therefore created a hostile or abusive working environment. See Hutchinson v. Holder, 668 F. Supp. 2d 201, 219 (D.D.C. 2009) (refusing to dismiss plaintiff's hostile work environment claim when the

complaint contained "dozens of incidents that [the plaintiff] alleges constituted a hostile work environment.") (emphasis added).

Finally, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher, 524 U.S. at 807. And here the plaintiffs allege that Dr. Mountvarner was the physician "in charge of the Emergency Room at [Howard] while [they] were employed in the Emergency Room at [Howard]." Compl. ¶ 11. As the person in charge of the emergency room, Dr. Mountvarner had authority over the plaintiffs, and therefore, the plaintiffs' Complaint plausibly alleges that they have "some basis for imputing liability for the harassment to the employer." Cromer-Kendal, 326 F. Supp. 2d at 57.

For the reasons set forth above, the facts alleged in the plaintiffs' Complaint "nudge" their claim "across the line from conceivable to plausible." Iqbal, ___ U.S. at ___, 129 S. Ct. at 1952. The defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) is therefore denied.

**B. Count III (The Breach of Contract Claim)**

The plaintiffs allege that under their employment contract with Howard, "they were entitled to 60 days notice before [the] termination of [their] employment, and [Howard] failed to provide any notice whatsoever before terminating their employment." Compl. ¶ 23. The plaintiffs further contend that "[Howard] did not, and to date has not, provided the 60 days' pay as required by Clause X of the employment contract . . . ." Id. ¶ 26. Howard does not contest the validity of the plaintiffs' breach of contract claim, rather, it argues that "if the Court dismisses the Title VII and DCHRA claims, it should dismiss or remand the remaining contract claim [to the Superior Court] . . . because the Court would not have original jurisdiction over that claim," and because the amount in controversy would fall short of $75,000, the minimum required for

federal diversity jurisdiction under 28 U.S.C. § 1332(a). Def.'s Mem. at 2-3. However, having denied Howard's motion to dismiss the plaintiffs' Title VII claims, the Court shall retain supplementary jurisdiction over their related breach of contract claim pursuant to 28 U.S.C. 1367(a).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the plaintiffs have pleaded sufficient factual allegations to make it plausible that they were subjected to a hostile work environment created by the actions of Dr. Mountvarner. The defendant's motion to dismiss the Title VII and DCHRA claims is therefore denied. The Court further concludes that the plaintiffs' Title VII and DCHRA claims are not time-barred, and accordingly denies the defendant's motion to dismiss Counts I and II on timeliness grounds. Finally, having denied the defendant's motion to dismiss the plaintiffs' Title VII claims, the Court will retain supplementary jurisdiction over the substantially related breach of contract claims.[8]

_____/s/_____
Reggie B. Walton
United States District Judge

---

[8] The Court will issue an Order consistent with this opinion.